554 F.Supp. 429 (1983)
UNITED TRANSPORTATION UNION, Petitioner,
v.
METRO-NORTH (COMMUTER RAIL DIVISION OF THE METROPOLITAN TRANSPORTATION AUTHORITY) and Consolidated Rail Corporation, Respondents.
Civ. A. No. 82-26.
Special Court, Regional Rail Reorganization Act of 1973.
January 10, 1983.
Arnold B. Elkind, Michael Flynn, Elkind, Flynn & Maurer, P.C., New York City, for petitioner United Transp. Union.
Lewis B. Kaden, James D. Liss, Davis, Polk & Wardell, New York City, for respondent Metro-North (Commuter Rail Div. of The Metropolitan Transp. Authority).
Dennis Alan Arouca, David S. Fortney, Consolidated Rail Corp., Philadelphia, Pa., and Harry A. Rissetto, John A. Fraser, Morgan, Lewis & Bockius, Washington, D.C., for respondent Consolidated Rail Corp.
Before GASCH, Presiding Judge and BRYANT and WEINER, Judges.

MEMORANDUM
PER CURIAM:
This case is before the Court on the petition of the United Transportation Union (UTU) for review of an arbitrator's award made on October 12, 1982 by Neutral Referee Fred Blackwell pursuant to Section 508 of the Rail Passenger Service Act (RPSA) as amended by the Northeast Rail Service Act of 1981 (NRSA), Pub.L. No. 97-35 (August 13, 1981). 45 U.S.C. § 588. This Court has jurisdiction over the petition pursuant to Section 1152 of NRSA. 45 U.S.C. § 1105(a). Oral argument was heard on December 17, 1982. For the reasons stated hereinafter, UTU's petition for review and declaratory judgment is hereby dismissed.

*430 BACKGROUND
The petitioner herein represents operating employees performing freight and passenger services on Consolidated Rail Corporation (Conrail) in New York and Connecticut, among other states. These employees were subject to possible transfer to Metro-North on January 1, 1983. Metro-North is a "commuter authority" within the meaning of Section 1135(a)(3) of NRSA. 45 U.S.C. § 1104(3). Metro-North is currently in the process of assuming Conrail's commuter rail operations from Grand Central Terminal in New York City to Connecticut and along the Hudson and Harlem divisions of Conrail.
In the past, Conrail has provided commuter service on the above lines under a subsidy arrangement with Metro-North as provided by Section 304 of the Regional Rail Reorganization Act of 1973. Pursuant to Section 1136 of NRSA, Conrail's commuter obligations ceased effective January 1, 1983. As of that date, Metro-North became the operator of these lines. In effecting this transfer, Metro-North, Conrail and the representatives of the affected employees must comply with the transfer scheme mandated by Congress in Sections 508 through 510 of the RPSA. These sections prescribe the methods by which Conrail employees are to be absorbed by Conrail's successors.[1]
Pursuant to Section 508 of RPSA, the parties entered into extensive negotiations with regard to the required Implementing Agreement. When, by August 1, 1982, an accord had not been reached, the parties invoked the mandatory arbitration provision of Section 508(d). By letter dated September 14, 1982, the National Mediation Board (NMB) appointed Mr. Fred Blackwell as the Neutral Referee to resolve the dispute. All parties presented voluminous submissions to the Referee. After a lengthy hearing on October 4, 1982, Referee Blackwell issued his decision on October 12, 1982.
The disputed portion of the award rendered by Referee Blackwell in the instant case is as follows:
The other item not within the jurisdictional reach of this proceeding relates to the parties' concerns in respect to the impact upon the appended implementing agreements by the administration and/or enforcement of Section 1165 of the NRSA as amended. In this regard it is noted that Metro-North takes the position that it is not subject to Section 1165 of NRSA and that the Brotherhoods take the position that Metro-North is subject to such provisions. The responsibility to answer this conflict lies of course elsewhere than in this forum. However, it is observed that nothing in this agreement is to be construed as prejudicing the respective positions or rights of the parties with respect to Section 1165. (Emphasis added.)
The petition for review was filed herein by UTU on November 17, 1982.

DISCUSSION
The dispute in the instant case involves the proper interpretation and application of Section 508 of RPSA and Section 1165 of NRSA. Section 508 of RPSA provides (in pertinent part):
(a) Not later than May 1, 1982, Conrail, commuter authorities that intend to operate commuter service, and representatives of the various crafts or classes of employees of Conrail to be transferred to the commuter authorities shall enter into negotiations for an implementing agreement in accordance with subsection (c) of this section.
. . . . .
(c) Such negotiations shall
. . . . .
(7) ensure the retention of prior seniority on Conrail of employees transferring *431 to Amtrak Commuter or a commuter authority and determine the extent and manner in which such employees shall be permitted to exercise such seniority in order to (A) provide employees transferred to Amtrak Commuter or a commuter authority at least one opportunity every six-month period to exercise previous freight seniority rights ....
45 U.S.C. § 588 (emphasis added).
In contrast, Section 1165 of NRSA provides:
After January 1, 1983, Conrail shall be relieved of the responsibility to provide crews for intercity passenger service on the Northeast Corridor. Amtrak, Amtrak Commuter, and Conrail, and the employees with seniority in both freight and passenger service shall commence negotiations not later than 120 days after the date of the enactment for the right of such employees to move from one service to the other once each six-month period

....
45 U.S.C. § 1113 (emphasis added).
The basic difference between the above-cited statutory provisions relates to "flow-back" rights to be accorded an employee transferring to Metro-North. Both Metro-North and Conrail assert that Section 508(c)(7)(A) of RPSA allows for only a "one-shot" chance to return to Conrail freight services from Metro-North. Thereafter, respondents assert, that employee forfeits all Metro-North seniority accumulated prior to "flowing back" to Conrail.[2] This contention is based upon the language of Section 508(c)(7)(A): "... one opportunity every six-month period to exercise previous freight seniority rights." 45 U.S.C. § 588(c)(7)(A). In contrast, respondents assert, Section 1165 of NRSA provides for perpetual flow-back rights only for those Conrail employees transferring to Amtrak for intercity passenger service on the Northeast Corridor (i.e., "... the right of such employees to move from one service to the other once each six month period." 45 U.S.C. § 1113).

A. The Standard of Review

Section 508(d)(3) of RPSA mandates that the award of an arbitrator issued pursuant thereto be "final and binding to the same extent as an award of an adjustment board under section 3 of the Railway Labor Act." 45 U.S.C. § 588(d)(3). This Court has held that such a standard of review of an award is extremely narrow, requiring a showing that the arbitrator failed to comply with the statute's requirements, failed to act within his jurisdiction, or acted corruptly. New Jersey Transit Rail Operations, Inc. v. International Brotherhood of Boilermakers, et al., 550 F.Supp. 1327 (Sp.Ct.R.R. R.A.1982). The Court now turns to the merits of the petition for review in the instant case.

B. The Union's Challenge to the Referee's Award

UTU asserts that its members who have accumulated seniority with Conrail on both passenger and freight service and are to be transferred to Metro-North are entitled to the protections of Section 1165 of NRSA despite the fact that Section 1165 of NRSA only refers to Amtrak, Amtrak Commuter and Conrail. In effect petitioner contends that Congress committed a "legislative omission" in not including local commuter authorities in Section 1165. Petitioner further asserts that because the two provisions in dispute were enacted by Congress on the same day, such provisions must be read together. Importantly, petitioner does not contend that Referee Blackwell's award is inconsistent with Section 508 of RPSA; rather, the basis of petitioner's challenge is that the award is inconsistent with Section 1165 of NRSA. The Court believes that this fact is dispositive of petitioner's claims, for Section 508(d)(3) provides that "the referee shall resolve and decide all matters in dispute with regard to *432 the negotiation of the implementing agreement." 45 U.S.C. § 588(d)(3). Further, the NMB has determined that, based upon the above-cited provision, "[m]atters before the arbitrator are strictly limited under Subsection 508(c) and it is not intended that the arbitrator will have time to consider peripheral matters." In the Matter of Arbitration Pursuant to Subsection 508(d) of the Rail Passenger Service Act, as Amended, 9 NMB No. 144 at 511 (September 7, 1982), reaffirmed, 9 NMB No. 148 (September 13, 1982) (emphasis added).
Without regard to the language of Section 508(d)(3) cited above, or to the cited opinion of the NMB, this Court has held that, in construing a particular statutory provision, one must "look first at the words of the statute ... and it is hardly necessary to do more." United Transportation Union v. Consolidated Rail Corporation, 535 F.Supp. 697, 703 (Sp.Ct.R.R.R.A.), cert. denied sub nom., Cannon v. Consolidated Rail Corporation, ___ U.S. ___, 102 S.Ct. 2960, 73 L.Ed.2d 1350 (1982) (citations omitted). Section 1165 of NRSA clearly and plainly enunciates the entities which are subject to its mandates, and Metro-North is not among those entities named therein. In challenging this conclusion, petitioner offers correspondence from Congressman James J. Florio, Chairman of the Subcommittee on Commerce, Transportation and Tourism, who was involved in the enactment of NRSA. Congressman Florio, without referring to any specific statutory provision, states that "the ability to flow back and forth between a commuter authority and Conrail once every six monthsas desired by the UTUis consistent with the flexibility intended by NERSA." See Exhibit B to UTU's Petition for Review, November 12, 1982. However, such a post-enactment statement of the intent of one legislator is not controlling. Regional Rail Reorganization Act Cases, 419 U.S. 102, 132, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974). Further, where a statute and its legislative history lead to a reasonable interpretation, that interpretation controls over subsequent legislative comments. TVA v. Hill, 437 U.S. 153, 189-93, 98 S.Ct. 2279, 2299-01, 57 L.Ed.2d 117 (1978).
With regard to the legislative history of NRSA, which was prepared as part of the Omnibus Budget Reconciliation Act of 1981, the Conference Committee on Public Law 97-35 explained that Section 508 of RPSA:
... provide[s] generally for retention of seniority rights and the right to "bump" back into Conrail at least once every six months.
Explanatory Statement, 127 Cong.Rec. H.5962 (daily ed., August 4, 1981) (emphasis added). From the above statement it is clear that Congress intended Section 508 to provide for negotiation of limited transfer back to Conrail. However, the above statement is also completely silent as to any right subsequently to transfer back to a commuter authority. At best, Section 508 is merely ambiguous. In contrast, in presenting Section 1165 of NRSA, the same Conference Committee stated that:
Amtrak, Amtrak Commuter, and the Corporation will negotiate for the right of freight and passenger employees to move from any of these services to another every six months.
Explanatory Statement, 127 Cong.Rec.H. 5966 (daily ed., August 4, 1981). Thus, when these two statements are read together, it becomes clear that Congress, in enacting Section 508 of RPSA and Section 1165 of NRSA, envisioned two different "flow back" schemes depending upon the parties involved.[3] Further, consistent with this interpretation, the Court is of the opinion that if Congress had intended Section 1165 of NRSA to apply to local commuter authorities, it would have so stated. See Section 1188 of NRSA (technically amending a number of provisions of RPSA to include *433 "commuter" authorities). Had Congress chosen to do so, it would have then become necessary to reconcile the resulting redundancy between Section 508 of RPSA and Section 1165 of NRSA. Indeed, if petitioner's argument is correct, there would be no need to again address flow-back rights separately in Section 508 of RPSA with regard to local commuter authorities.
Petitioner's challenge to the arbitration award appears to assert either that the referee exceeded his jurisdiction or that he failed to follow the correct statutory provision. The Court holds that, whether based upon either of the above contentions, petitioner has failed to prove its claim. It is clear to the Court that it cannot act as a "super-legislature" even when a particular statutory provision is ambiguous: in this case, Section 508(c)(7)(A). That task is properly left to the branch of our government charged with the responsibility therefor. In any event, the statutory provision which petitioner asserts is applicable to Metro-North is not ambiguous at all and clearly states that Conrail, Amtrak and Amtrak Commuter are the only railroad entities covered thereby.

CONCLUSION
The petition in the instant case must be dismissed because:
1. Referee Blackwell did not exceed his jurisdiction by refusing to consider or apply Section 1165 of NRSA;[4]
2. Referee Blackwell followed the correct statutory provisions, Section 508(c) of RPSA, in making his award;
3. Section 1165 of NRSA is only applicable to the entities clearly and plainly named therein; and
4. Metro-North, not referred to in Section 1165 of NRSA, is not subject to the provisions thereof.
NOTES
[1] Sections 508, 509, and 510 of RPSA were enacted by Congress to provide a method for the transfer of commuter services from Conrail to commuter authorities. Section 508 deals with the preliminary step: the Implementing Agreement. Section 509 provides for a fact-finding panel to recommend changes in operating procedures and practices. Section 510 provides for a new collective bargaining agreement once the transfer has been made.
[2] The Implementing Agreement awarded does provide for flow back to Metro-North after return to Conrail, for those employees "deprived" of Metro-North employment due to circumstances beyond their control.
[3] As to why Congress chose to treat Amtrak Commuter differently from other commuter authorities, the Court believes the answer to that question is irrelevant to the disposition of the instant case. However, it is noted that there is a nexus between Amtrak and Amtrak Commuter which may explain the different treatment. See Section 504(h) of RPSA (requiring, to the extent practicable, the consolidation of Amtrak and Amtrak Commuter work forces).
[4] Indeed, if Referee Blackwell had applied Section 1165 of NRSA to Metro-North, petitioner's claim that the Referee exceeded his jurisdiction, or that he failed to apply the correct statutory provisions, may be meritorious.